## In Re LINTHICUM

Ohio Appeals, 6th Dist, Lucas Co No 2271. Decided Jan 20, 1930

Judson R. Linthicum, Toledo, for Linthicum.

Robert Newbegin, Toledo, for Committee.

CUSHING, PJ, ROSS & HAMILTON, JJ, (1st Dist) sitting.

CUSHING, PJ.

It is argued that this judgment, which in effect was a suspension of the right to practice law, was based on the unlawful drawing of the check, which is the foundation for the instant proceeding, and that the action of the court in case No. 16551 is res adjudicata of any further proceeding on that charge. This proposition is not without some difficulty. It is contended on the part of the Committee that there is no suspension from the practice of law in the judgment in case No. 16551, but that the order of the court is only given as a reason for suspending the execution of the sentence. However that may be, what was done was equivalent to a temporary suspension from the practice of law by the trial court, and if the trial court possessed the power to suspend, as was done in this case, the majority of the court is of opinion that this would be res adjudicata, and that the plaintiff in error would have to procure a modification of the order of the court in order to engage in the practice, notwithstanding any action in the case under review. This leads us to the question of the power of the court.

The case **In Re Charles A. Thatcher, 80 Oh St 492,** presents a very strong ground for holding that under the inherent power of the court, where the action involving moral turpitude is within his knowledge, might have the same power to disbar an attorney at law as it would have to punish for contempt of court, committed in the

presence of the court.

We believe the later case of **In Re Hawke, 107 Oh St 341,** presents the question of the inherent power of the court in such matters more in accordance with the present day view on the subject. In that case, the court said in the course of the opinion:

"It is urged, however, that courts have an inherent right to disbar or suspend attorneys at law from the practice of this profession, and that therefore they are in a measure an exception to the general rule as to other licensed persons. We do not understand that when the legislature confers a right upon a citizen of Ohio any court has an inherent right to arbitrarily, or for any cause other than that enumerated in the statute, deprive such person of such right, even though he be an attorney at law who is a quasi member of the court. Courts always have had and must have the power to hear and determine contempts of court, and to find persons, even attorneys at law, guilty of such contempt, and they may impose penalties that are at least the equivalent of temporary suspension from the practice; but they may not, as an inherent right, disbar any attorney at law, when that right has been conferred by a statute."

This pronouncement would seem to place the question of the power of the court in disbarment proceedings within the purview of the statute when, and if the statute covers the question. Undoubtedly if there arise some questions not covered by statute the common law rule as to the inherent rights of courts would obtain.

In the Thatcher case, the Supreme Court said that the statutes as they existed at that time were but declaratory of the common law power of the court in disbarment proceedings.

The main question is, whether or not the statute providing for the disbarment proceedings, **GC 1708,** is effective to control the inherent power of the court as recognized in the common law; and, if so, whether or not that statute was followed in the proceeding in case No. 16551, giving the court power to make an order with reference to the suspension of the plaintiff in error from the practice of law. This discussion seems to have become necessary, in view of the statement in the Thatcher case that the statutes bearing on the subject of disbarment are but declaratory of the common law, and could go no farther. That since the granting of the license privilege to practice law is purely judicial, that

the taking away of that right and privilege is purely judicial, and that any attempt of legislatures to legislate on the subject is invading the judicial branch of the government and is inoperative, except as declaratory. Since this pronouncement of the Supreme Court there has been considerable action looking toward the control of attorneys at law, their admission to the bar as well as, disbarment for misconduct involving moral turpitude. The statutes provide as to the qualifications necessary to present an application for admission to the bar. There are many sections of the law, beginning with 1698 to 1711, inclusive, on this subject. We are of opinion that these sections remove from the courts all inherent right to disbar or suspend attorneys at law from the practice of their profession, and that the profession and the courts must look to the statutes on the subject, in view of the fact that the legislature has legislated fully on the subject. This being true, then in case No. 16551, if the court desired to bring aboute the disbarmnt of the suspension f the plaintiff in error, it was necessary for the court to follow the proceedings provided for in section 1708.

**Sec 1708 GC,** is purely procedural. It does not in any way affect the merits of the case. If there could be any constitutional question regarding the right of the legislature to legislate on the subject of disbarment, which would interfere with the inherent power of the court, that objection would not obtain against section 1708.

A similar question arose in the jurisdiction of the court of appeals under the constitution. It has been held repeatedly that the legislature could not pass laws affecting the constitutional jurisdiction of the courts of appeals. This did not in any way, however, affect the statutory provision on the question of procedure, which provided that a bill of exceptions to be recognized must be filed in forty days from the judgment, and that the petition in error must be filed in seventy days therefrom. So that the provision as to procedure in no wise affected the jurisdiction of the court under the constitution and the power to review judgment.

So in disbarment proceedings, **1708 GC,** which provides for the method of bringing about a hearing on the question of disbarment, is one of procedure, and to give jurisdiction to the court, that procedure must be strictly followed. It provides:

"Before an attorney is suspended or removed, or publicly or privately reprimanded,

written charges must be filed against him, stating distinctly the grounds of complaint, and a copy thereof, certified by the clerk, under the seal of the court, served upon him. After such service, he shall be allowed a reasonable time to collect and present testimony in defense, and he shall be heard by himself or counsel."

The judgment entered in case No. 16551, quoted, shows there was no such action taken as provided by 1708 GC. Therefore, there was no power lodged in the court to make any order of suspension or disbarment as against Linthicum.

It therefore follows that whatever effect may be given to the order entered in that case, it was a mere nullity, void, and of no effect, and cannot be pleaded as a bar to the proceedings under review.

As to the other question raised in the case, that the charge does not involve moral turpitude, we are of the opinion that the proof, the indictment, and the plea of guilty sufficiently dispose of this question. The charge to which the plea of guilty was made was a felony under the statute. It has been decided that felonies involve moral turpitude, at least this was the decision of the trial court, and we are in accord therewith.

The judgment will be affirmed.

Hamilton, J, concurs.

ROSS, J, CONCURRING.

I concur in the judgment, but for the reason that there was no disbarment previous to the instant proceeding.

The majority opinion states: "what was done was **equivalent** to a temporary suspension from the practice of law by the trial court". However, it was **not** a suspension or a disbarment. It was an alternative presented to the defendant in the criminal case. He was divested of no legal right. He was as much an attorney after suspension of the sentence as before. He had all the rights and privileges accorded him after he took the oath of office of an attorney at law. If he did not practice, he voluntarily refrained from exercising the privileges he possessed and continued to possess up to the time of the decree in the instant case. After the disbarment proceedings, by operation of the decree of disbarment, he was divested and stripped of every privilege and prerogative of an attorney at law, and was from that time in the same position and status as before taking the oath of an attorney at law. Had he practiced law after the suspension of the sentence in the criminal case, and

before the disbarment decree, he might have been sent to the penitentiary, not because he had practiced law unlawfully, but because he had violated the terms of his suspension of sentence. But, after disbarment, if he practices his profession, he may be punished for exercising the privileges of an attorney at law, which he no longer possesses.

Thus viewing the case, there was no disbarment previous to the decree in the instant case, and, hence, no element of res adjudicata is presented.